1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY GUILLORY,                      No.  2:21-cv-0462 WBS AC P

12                      Plaintiff,

13          v.                              FINDINGS AND RECOMMENDATIONS

14   BHUTIA, et al.,

15                      Defendants.

16

17          Plaintiff is a state prisoner proceeding without an attorney in a civil rights action pursuant

18   to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's first amended complaint ("FAC")

19   against defendants Bhutia and Flores for Eighth Amendment deliberate indifference and against

20   Bhutia for Fourteenth Amendment Due Process violations.  ECF No. 20 (screening order).

21   Currently before the court are defendants' motions to revoke in forma pauperis ("IFP") status,

22   ECF No. 34, and for summary judgment, ECF No. 40.  For the reasons that follow, the

23   undersigned recommends that (1) defendants' motion to revoke IFP be denied as moot, and (2)

24   defendants' motion for summary judgment be granted as to plaintiff's Eighth Amendment claims

25   but denied as to plaintiff's Fourteenth Amendment claim against defendant Bhutia.

26   ////

27   ////

28   ////

1

1      I.      Allegations of the First Amended Complaint

2              The FAC alleges that defendant Bhutia, a psychiatrist, and defendant Flores, a registered

3      nurse, both of whom were employees at California Medical Facility ("CMF") – Vacaville during

4      the relevant period, violated plaintiff's constitutional rights when: (1) Dr. Bhutia ordered that

5      plaintiff be given psychotropic medication against his will, despite the fact that he was not

6      experiencing a mental health crisis, and (2) Nurse Flores failed to accurately document his severe

7      adverse reactions to medication, thus prolonging his suffering.  ECF No. 17 at 3, 7-10.

8      Specifically, plaintiff alleges that on January 14, 2020, after he had complained about his cell

9      being too cold and that it was preventing him from falling asleep, he was removed from his cell

10     and "confronted" by Dr. Bhutia.  Id. at 3.  In response, Bhutia determined that plaintiff was

11     "agitated," and she forced plaintiff to be injected with Chlorpromazine and other medication that

12     plaintiff did not want or need.  Id. at 3, 7.  Prior to this incident, plaintiff had no history of

13     prescribed antipsychotic or other psychiatric medication, nor did he have a need for it.  Id. at 7.

14             After being injected with the drugs, plaintiff had several physical reactions including

15     general and left arm pain, nausea, throbbing headaches, vomiting, diarrhea, and blackouts.  Id. at

16     3, 7.  When he repeatedly complained later that day to Nurse Flores, around 10:03 p.m., she

17     falsified and/or improperly documented plaintiff's records in her progress notes, indicating that he

18     had no physical complaints and no side effects from the medication.  Id. at 7.

19     II.     Procedural Background

20             On March 15, 2021, while incarcerated, plaintiff filed his original complaint in this case.

21     ECF No. 1.  On March 19, 2021, he filed a request to proceed IFP.  On April 14, 2021, the court

22     granted plaintiff's request, and stated that pursuant to 28 U.S.C. § 1915(b)(1), plaintiff would be

23     obligated to pay the statutory filing fee of $350.00 for the instant action by providing an initial

24     payment from his trust account and then making monthly payments of twenty percent of the

25     preceding month's income credited to his trust account.  ECF No. 9 at 2.

26             On February 17, 2023, plaintiff filed a notice of change of address, which indicated that

27     he was no longer incarcerated.  ECF No. 19.  On May 30, 2023, the court issued a screening order

28     finding that service of the first amendment complaint was appropriate.  ECF No. 20.

On December 11, 2023, while discovery was ongoing, defendants filed a motion to revoke IFP. ECF No. 34. Plaintiff did not file an opposition. On May 24, 2024, defendants filed a motion for summary judgment. Plaintiff filed an opposition, and defendants replied. ECF Nos. 43, 47. Both motions are currently pending before the court.

III.    Motion to Revoke IFP

Defendants motion to revoke plaintiff's IFP argues that because plaintiff was released from custody, the court should revoke his previously granted IFP status, require plaintiff to submit a new request to proceed IFP, and dismiss the action if plaintiff fails to either pay the filing fee or submit a new IFP application. ECF No. 34 at 3. Although plaintiff did not file a response to defendants' motion, the court received payment from plaintiff and his current filing fee balance in this case is $0. Accordingly, the undersigned recommends defendant's motion to revoke plaintiff's IFP status be denied as moot.

IV.    Motion for Summary Judgment

A.    Defendants' Arguments

Defendants seek summary judgment on the grounds that the undisputed facts show that: (1) plaintiff failed to exhaust his administrative remedies against defendant Flores prior to bringing this action; (2) Dr. Bhutia did not disregard a serious medical need when she ordered that plaintiff be involuntarily medicated during a mental health crisis; (3) Flores was not deliberately indifferent because she accurately documented plaintiff's conditions during her shift and was not aware of plaintiff's reported side-effects before her shift began; (4) plaintiff suffered no harm as a result of his purported undocumented side-effects; (5) Dr. Bhutia's single order of involuntary medication did not violate due process because it was administered in an emergency situation; and (6) both defendants are entitled to qualified immunity. ECF No. 40-2.

B.    Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Plaintiff has also failed to file a separate document in response to

1    defendants' statement of undisputed facts that identifies which facts are admitted and which are

2    disputed, as required by Local Rule 260(b).  See L.R. 260(b).

3        "Pro se litigants must follow the same rules of procedure that govern other litigants."

4    King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

5    Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

6    established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

7    *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

8    F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

9    "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

10   upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

11   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

12   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

13   "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

14   omitted).

15       Accordingly, the court considers the record before it in its entirety despite plaintiff's

16   failure to be in strict compliance with the applicable rules.  However, only those assertions in the

17   opposition which have evidentiary support in the record will be considered.

18       In his opposition to the motion, plaintiff does not dispute that he failed to exhaust his

19   administrative remedies against defendant Flores and that defendants were not deliberately

20   indifferent to plaintiff's serious medical needs.  See ECF No. 43.  Instead, plaintiff argues that

21   defendants have failed to establish they are entitled to summary judgment under California Code

22   of Civil Procedure 437(c)[1] because: "[t]hey have done nothing but provide the court with

23   distorted factual interpretations, argument and outright misstatements of evidence and

24   _____

25   [1] Defendants simultaneously served plaintiff with notice of the requirements for opposing a
     motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

26   summary judgment.  ECF Nos. 40, 40-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.
     1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

27   Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).
     Plaintiff nonetheless cites to and relies on the standard that applies under California law.  ECF

28   No. 43 at 1, 7-10.  Rule 56 standards apply here.

misrepresented the law by claiming that Mr. Guillory has to prove that Defendants were the cause of his pain while it is well settled that what is required of plaintiff in a negligence action is to prove to a trier of fact that it is more likely than not that the Defendant's negligence caused his injuries," id. at 3; plaintiff was not agitated and did not have a bad attitude when he interacted with Bhutia on January 13 or January 14, 2020, id. at 5; plaintiff spoke with Flores later in the day and reported his complaints and later found she had not documented his complaints, id. at 6; defendants' negligence was the direct and proximate cause of plaintiff's continued suffering, id. at 9; and defendants cannot rely on plaintiff's deposition testimony to meet their initial burden on summary judgment. Id. at 10.

### C.    Defendants' Reply

In their reply, defendants point out that plaintiff's opposition "is procedurally deficient," "is devoid of any declarations, exhibits, or supporting materials," relies exclusively on his verified complaint, and makes conclusory factual assertions in an effort "to manufacture a dispute of fact that contradicts his deposition testimony." ECF No. 47 at 2-3. Defendants argue that the court should grant summary judgment because plaintiff's opposition does not dispute that (1) plaintiff failed to exhaust his administrative remedies against Flores; (2) defendants were not deliberately indifferent to plaintiff's serious medical needs; (3) Bhutia did not violate plaintiff's Fourteenth Amendment rights; and (4) defendants are entitled to qualified immunity. Id. at 3-5. Defendants also urge the court to strike plaintiff's arguments concerning defendants' duty of care and references to a negligence claim against them because such arguments are "irrelevant and immaterial" to the claims before the court. Id. at 5-6.

## V.    Legal Standards

### A.    Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need

1    not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

2    factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

3    truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4    1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus,

5    the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to

6    see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

7    quotation marks omitted).

8         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

9    court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

10    v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

11    opposing party's obligation to produce a factual predicate from which the inference may be

12    drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

13    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

14    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

15    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

16    non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

17    U.S. at 289).

18         B.    Eighth Amendment Deliberate Indifference

19    "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

20    must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091,

21    1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff

22    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

23    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

24    (2) "the defendant's response to the need was deliberately indifferent."  Id. (some internal

25    quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

26         Deliberate indifference is established only where the defendant subjectively "knows of

27    and disregards an excessive risk to inmate health and safety," Toguchi v. Chung, 391 F.3d 1051,

28    1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted), and "may

7

1   appear when prison officials deny, delay or intentionally interfere with medical treatment,"

2   Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted). However, a

3   difference of opinion between an inmate and prison medical personnel—or between medical

4   professionals—regarding the appropriate course of treatment does not by itself amount to

5   deliberate indifference to serious medical needs. Toguchi, 391 F.3d at 1058; Sanchez v. Vild,

6   891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of

7   deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically

8   unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive

9   risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90

10   F.3d 330, 332 (9th Cir. 1996)).

11         To demonstrate that a prison official was deliberately indifferent to a serious threat to the

12   inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an

13   excessive risk to inmate … safety; the official must both be aware of facts from which the

14   inference could be drawn that a substantial risk of serious harm exists, and [the official] must also

15   draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Castro v. County of

16   Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (explaining that subjective deliberate indifference

17   standard under the Eighth Amendment is well established). To prove knowledge of the risk,

18   however, the prisoner may rely on circumstantial evidence. Farmer, 511 U.S. at 842. The very

19   obviousness of the risk may be sufficient to establish knowledge. Id. Prison officials may avoid

20   liability by presenting evidence that they lacked knowledge of the risk or of a reasonable, even if

21   unsuccessful, response to the risk. Id. at 844-45. Negligent failure to protect an inmate from

22   harm is not actionable under § 1983. Id. at 835.

23         C.    Fourteenth Amendment Due Process for Involuntary Medication

24         Prisoners have a Fourteenth Amendment due process right to be free from the involuntary

25   medication of antipsychotic drugs. Washington v. Harper, 494 U.S. 210, 221-22 (1990). That

26   right, however, is not without limits. Substantive due process "permits the State to treat a prison

27   inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is

28   dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227.

8

1   Involuntary medication is impermissible "absent a finding of overriding justification and a

2   determination of medical appropriateness." Riggins v. Nevada, 504 U.S. 127, 135 (1992).

3   Procedural due process permits a state to involuntarily medicate a prisoner if the prisoner is

4   provided with notice, the right to be present at an adversarial hearing, and the right to present and

5   cross-examine witnesses. Harper, 494 U.S. at 235. Appointment of counsel is not required, and a

6   decision to medicate can be made by medical personnel rather than a court. Id. at 231, 236.

7          The U.S. Courts of Appeal have held that Harper's procedural protection may be

8   circumvented in an "emergency." See Hogan v. Carter, 85 F.3d 1113, 1116-17 (4th Cir. 1996),

9   cert. denied, 519 U.S. 974 (1996) (Harper procedural protections do not apply in an emergency);

10  Leeks v. Cunningham, 997 F.2d 1330, 1335 (11th Cir. 1993) (recognizing an emergency

11  exception to Harper, applicable where prisoner poses "such an imminent and serious danger to

12  himself or others that the minimal procedural requirements of Harper—notice and the right to be

13  present at and participate in a hearing—could not be met."); Kulas v. Valdez, 159 F.3d 453, 456

14  (9th Cir. 1998) (finding that plaintiff's case did not present an emergency, which would permit

15  circumventing the procedural protections laid out in Harper). The Ninth Circuit has specifically

16  held that a "merely loud and uncooperative" prisoner does not present an emergency sufficient to

17  circumvent Harper's procedures protections, but a prisoner who "had been in the throes of an

18  uncontrollable seizure for . . . three hours" when the doctor ordered involuntary medication did

19  present such emergency. Kulas, 159 F.3d at 456 (distinguishing from Hogan, 85 F.3d at 1114).

20         D.     Qualified Immunity

21         Qualified immunity is a defense that must be pled by a defendant official. Harlow v.

22  Fitzgerald, 457 U.S. 800, 815 (1982). It is an "entitlement not to stand trial or face the other

23  burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth,

24  472 U.S. 511, 526 (1985), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236

25  (2009)). Even if a constitutional violation occurred, prison officials are entitled to qualified

26  immunity if they acted reasonably under the circumstances. See Friedman v. Boucher, 580 F.3d

27  847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987). When government

28  officials are sued in their individual capacities for civil damages, a court must "begin by taking

note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert the defense of qualified immunity." Iqbal, 556 U.S. at 675.

The doctrine of qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow, 457 U.S. at 818). The qualified immunity analysis involves two parts, determining (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Saucier, 533 U.S. at 201; see Pearson, 555 U.S. at 232, 236; see also Bull v. City and County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010). A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 at 202; Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010). These prongs need not be addressed in any particular order. Pearson, 555 U.S. at 236.

VI.    Undisputed Material Facts[2]

Plaintiff has no medical training. ECF No. 40-3 ("Defendants' Statement of Undisputed Facts" or "DSUF") ¶ 4. In January 2020, plaintiff was an inmate in custody of the California Department of Corrections and Rehabilitation ("CDCR") at CMF, id. ¶ 1; defendant Dr. Bhutia was employed by CDCR as a psychiatrist at CMF and assigned to the Psychiatric Inpatient Program ("PIP"), which includes the Mental Health Acute Care Facility at CMF, id. ¶¶ 5, 6; and defendant T. Flores was employed by CDCR as a Registered Nurse ("RN") at CMF assigned to the Mental Health Acute Care Facility.

A.    Plaintiff's Behavioral and Mental Health History Prior to January 13, 2020

On December 26, 2019, plaintiff was admitted to a mental health crisis bed ("MHCB") "for danger to others, aggressive, volatile behaviors, paranoia and suspiciousness." Id. ¶ 9. This was plaintiff's third admission to a MHCB since August 30, 2019. Id. Plaintiff had a history of

---

[2] Unless otherwise noted, these facts are undisputed by the parties or are deemed undisputed by the court upon review of the record evidence.

10

1    multiple rules violation reports ("RVR") for assault.  Id.  On December 29, 2019, plaintiff

2    received a RVR for battery on a peace officer.  ECF No. 40-4 at 38 (Christ. Decl., Exh. M).  The

3    RVR indicated that plaintiff refused to uncover his cell window to allow for staff visibility, an

4    officer opened the cell door to check on plaintiff, and plaintiff assaulted the officer.  Id.

5         On January 5, 2020, a Petition for Involuntary Medication and Request for Hearing

6    pursuant to California Penal Code § 2602 was filed.  ECF No. 40-4 at 37-40 (Christ. Decl., Exh.

7    M, Petition for Involuntary Medication and Request for Hearing).  The hearing was scheduled for

8    February 4, 2020.  Id.

9         On January 9, 2020, plaintiff was admitted to the Mental Health Acute Care Facility at

10   CMF from a MHCB because a medical professional determined that plaintiff posed an acute

11   danger to himself and was having suicidal thoughts.  DSUF ¶¶ 1, 8; see also ECF Nos. 40-4 at 12

12   (CMF Mental Health Orders); 40-8 at 2 (Dr. Bhutia's Decl.); Guillory Depo. 17:10-25.  Prior to

13   January 9, 2020, plaintiff had been diagnosed with "mental health problem" and "unspecified

14   schizophrenia spectrum and other psychotic disorder."  DSUF ¶ 9; ECF No. 40-4 at 10 (Acute

15   ICF Initial Assessment MHMD).

16        B.     Events of January 13, 2020

17        On January 13, 2020, plaintiff covered his cell window with paper to get attention from

18   staff because the temperature of his cell was so cold he could not sleep.  DSUF ¶¶ 10, 11; ECF

19   No. 40-4 at 14 (Christ. Decl., Exh. C, Nurse Progress Notes); Guillory Depo. 24:12-21.

20   Plaintiff's actions triggered an alarm; an officer came to plaintiff's cell, told him to uncover the

21   window and cuff up.  ECF Nos 40-4 at 14 (Christ. Decl., Exh. C, Nurse Progress Notes); Guillory

22   Depo. 26:14-25.  Plaintiff complied and was taken to the dayroom to speak to a psychiatrist.

23   Guillory Depo. 27:1-4.  When asked why he covered his window, plaintiff said "I covered the

24   window because I'm cold."  DSUF ¶ 12; ECF No. 40-4 at 14 (Christ. Decl., Exh. C, Nurse

25   Progress Notes); Guillory Depo. 28:12-13.  Plaintiff was told staff had turned on the heat and he

26   returned to his cell without incident.  DSUF ¶ 12; ECF No. 40-4 at 14 (Christ. Decl., Exh. C, Nurse

27   Progress Notes); Guillory Depo. 28:13-29:1.

28   ////

C.    Events of January 14, 2020, Including Involuntary Medication

The next morning, on January 14, 2020, plaintiff complained to a nurse that it was cold in his cell and he could not sleep.  Guillory Depo. 29:12-21.  He asked her to check the temperature, which she did; it was fifty-seven degrees.  Guillory Depo. 29:14-19.  According to plaintiff, it felt colder than that.  Guillory Depo. 29:17-18.  Plaintiff told the nurse he needed to speak to somebody about the temperature in his cell because he could not sleep.  Guillory Depo. 29:20-21.  Hours went by with no response, so plaintiff covered his window with tissue.  Guillory Depo. 29:22-30:3.  An alarm was activated and staff responded.  See DSUF ¶ 14; Guillory Depo. 30:20-22; ECF No. 40-4 at 16 (Christ. Decl., Exh. D, Nurse Progress Notes).  Plaintiff was cuffed and escorted to the dayroom to talk to Dr. Bhutia.  Guillory Depo. 30:6-10; ECF No. 40-4 at 16 (Christ. Decl., Exh. D, Nurse Progress Notes); ECF No. 40-8 (Dr. Bhutia Decl.) ¶ 13.

Dr. Bhutia was informed about the incident the day before, listened to plaintiff's complaints, observed his speech, behavior and demeanor, diagnosed him with agitation, and ordered plaintiff be involuntarily medicated with 100 mg of Chlorpromazine and 50 mg of Benadryl by intramuscular injection.   ECF No. 40-8 (Bhutia Decl.) at ¶¶ 13-15, 17; ECF No. 40-4 at 16 (Christ. Decl., Exh. D, Nurse Progress Notes); Guillory Depo. 34:10-35:2.

Around 11:00 a.m., a psychiatric technician administered 100 mg of Chlorpromazine and 50 mg of Benadryl by intramuscular injection to plaintiff.  DSUF ¶ 21.  The medications, form of delivery (intramuscular), and dosages of 100mg of Chlorpromazine and 50 mg of Benadryl are medically appropriate to treat agitation.  Id. ¶ 20.

Plaintiff's vitals were taken, and he was escorted back to his cell where he lay down.  Id. ¶¶ 22, 23.  Sometime before lunch, a "nurse," whom plaintiff recognized as the nurse who regularly worked the 6:00 a.m. to 2:00 p.m. shift, pushed a computer monitor on a desk next to his cell.  Id. ¶¶ 24, 25.  He told the "nurse" he was nauseated and experiencing pain in his left arm where he received the medication injection.  Id. ¶ 26.  Plaintiff reported his symptoms because he wanted documentation to file a lawsuit.  Id. ¶ 27.  He did not report his symptoms to receive treatment.  Id.  Plaintiff fell asleep before lunchtime, woke up at dinner time for about three minutes, fell back asleep until the next morning.  Id. ¶¶ 29-31.  Plaintiff did not talk with any

12

1    other medical provider on January 14, 2020.  Id. ¶ 28.

2          D.     Facts Related to Defendant Flores

3       In January 2020, Nurse Flores was assigned to the Mental Health Acute Care Facility, and

4    did not work the second watch shift.  Id. ¶¶ 7, 35.  On January 14, 2020, Flores worked the third

5    watch shift, from 2:30 p.m. to 10:30 p.m., and made periodic rounds to each inmate-patient's cell

6    in the Mental Health Acute Care Facility.  Id. ¶ 32, 33.  Lunch, including the distribution and

7    collection of lunch trays, was completed before Nurse Flores began her shift.  Id. ¶ 34.  During

8    her rounds, she used a clipboard to document her observations and inmate-patient concerns; she

9    did not push a computer on a cart.  Id.

10    VII.     Discussion

11          A.     Defendant Nurse Flores

12       On summary judgment, Nurse Flores argues that she was not deliberately indifferent to

13    plaintiff's medical needs because (1) she did not know of and disregard an excessive risk to

14    plaintiff's health, and (2) she did not cause plaintiff any harm.  ECF No. 40-2 at 22-25.  As noted

15    above, plaintiff does not dispute these arguments in his opposition or identify any evidence that

16    would support the elements of Eighth Amendment liability as to defendant Flores.

17        The undisputed evidence shows that on January 14, 2020, plaintiff did not report his

18    symptoms to Nurse Flores, and plaintiff did not display symptoms during Flores' shift that could

19    rationally support a conclusion she knew of and disregarded an excessive risk to plaintiff's health.

20    Specifically, it is undisputed that: (1) on January 14, 2020, around 11:00 a.m., after being injected

21    with medication, plaintiff returned to his cell; (2) sometime before lunch, plaintiff spoke to a

22    "nurse" who pushed a computer monitor on a desk next to his cell; (3) plaintiff told this "nurse"

23    that he was nauseated and experiencing pain in his left arm where he was injected with

24    medication; (4) before lunch, plaintiff fell asleep and did not wake up until dinner time; (5) at

25    dinner time, he woke up for about three minute and then fell asleep until the next day; (6) other

26    than the nurse he spoke to before lunch, he did not speak to any other medical provider on that

27    day regarding the alleged side effects; (7) on January 14, 2020, Nurse Flores worked the third

28    shift watch from 2:30 p.m. to 10:30 p.m.; (8) Nurse Flores used a clipboard to document her

1    observations during rounds; (9) Nurse Flores did not push around a computer on a cart; and (10)

2    at 10:03 p.m. Nurse Flores wrote a progress note stating plaintiff had "no behavioral issues,"

3    "[n]o self-injurious behavior, no suicidal gestures, no acute distress," "[n]o physical complaints[,]

4    [n]o medication side effects reported," and did not document any observations or activities or

5    reported medication side effects that occurred before 2:30 p.m.

6        On these facts, no rational trier of fact could find that defendant Flores "knew of" and

7    disregarded an excessive risk to plaintiff's health.[3]  Accordingly, the undersigned recommends

8    that the motion for summary judgment be granted as to defendant Flores.

9            B.    Defendant Dr. Bhutia

10               i.   Eighth Amendment Deliberate Indifference

11       Dr. Bhutia argues that she is entitled to summary judgment because a disagreement over

12   treatment or even a misdiagnosis is not sufficient to support an Eighth Amendment claim.  ECF

13   No. 40-2 at 20.  She further argues that plaintiff cannot show that she acted with the requisite

14   culpable state of mind, or that her course of treatment on January 14, 2020—injecting him with

15   Chlorpromazine and Benadryl against his wishes—was medically unacceptable.  Id. at 21-22.  In

16   opposition plaintiff contends there was no need to involuntarily medicate him in the first place,

17   because plaintiff was not experiencing a mental health crisis and was not on any antipsychotic

18   medications or under any court order for such medication.  ECF No. 43 at 5-6.[4]  After careful

19   consideration of the arguments and evidence before the court, the undersigned recommends

20   granting Dr. Bhutia's motion for summary judgment on the deliberate indifference claim against

21   Dr. Bhutia.

22       Defendants are correct that neither a difference of opinion nor a misdiagnosis, without

23

24   [3]  Because plaintiff's failure of proof on his substantive claim against Nurse Flores is clear, the
     undersigned need not address the more complicated issue whether plaintiff's administrative
25   grievance regarding the involuntary medication incident was adequate to exhaust his remedies as
     to Nurse Flores (or any other nurse to whom plaintiff may have complained following the
26   injection at issue).

27   [4]  Plaintiff also argues that defendants cannot meet the summary judgment standard by relying
     exclusively on plaintiff's deposition testimony.  Id. at 9-10.  As previously noted, plaintiff relies
28   on incorrect standards for summary judgment.  Accordingly, this argument is rejected.

1    more, is sufficient to support an Eighth Amendment medical deliberate indifference claim.

2    Toguchi, 391 F.3d at 1058.  Inadequate medical treatment that might amount to negligence or

3    even malpractice does not rise to the level of an Eighth Amendment violation.  Lemire v. Cal.

4    Dep't of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013).  Instead, plaintiff "must show that

5    the chosen course of treatment 'was medically unacceptable under the circumstances,' and was

6    chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391

7    F.3d at 1058 (quoting Jackson, 90 F.3d at 332).  Plaintiff has not done so.

8          Plaintiff does not argue or identify any evidence that on January 14, 2020, he suffered

9    from a serious medical need, or that treatment of any medical need was inadequate.  See Edmo v.

10   Corizon, Inc., 935 F.3d 757, 785 (9th Cir. 2019) ("To establish a claim of inadequate medical

11   care, a prisoner must first show a serious medical need by demonstrating that failure to treat a

12   prisoner's condition could result in further significant injury or the unnecessary and wanton

13   infliction of pain." (citation and internal quotation marks omitted)).  Instead, plaintiff argues and

14   puts forth evidence that the treatment was *involuntary*, which is a claim appropriately analyzed

15   under the Fourteenth Amendment Due Process Clause.  See Madsen v. United Staes, No. C17-

16   5218 RBL-DWC, 2017 WL 1652983, at *3-4, 2017 U.S. Dist. LEXIS 66828, at *6 (W.D. Wash.

17   May 2, 2017) (plaintiff's allegations that the treatment was involuntary rather than inadequate is

18   "more appropriately analyzed under the Fourteenth Amendment[]"); Carter v. Koprivnikar, No.

19   15-CV-0435 KLM, 2016 WL 950125, at *4, 2016 U.S. Dist. LEXIS 32485, at *9-11 (D. Colo.

20   Mar. 14, 2016) (plaintiff has not stated a deliberate indifference claim because he does not allege

21   an act or omission indicating deliberate indifference to a serious medical need; instead, he argues

22   he did not need the medication at issue); cf. Hogan, 85 F.3d at 1118 (in analyzing a Fourteenth

23   Amendment claim based on the administration of involuntary medication, the Fourth Circuit

24   explained that "[i]f [defendant] had not ordered the [involuntary medication], and instead delayed

25   emergency medical intervention until after [plaintiff] had been afforded the predeprivation

26   hearing to which the district court held [plaintiff] was entitled to, it is not unlikely that

27   [defendant] would now be facing a lawsuit by [plaintiff] claiming that he was deliberately

28   indifferent to his serious medical needs.").

Plaintiff also does not argue or identify evidence that it was medically unacceptable to treat a patient, diagnosed with agitation and in an acute care facility, with the medications ordered by Dr. Bhutia, much less that Dr. Bhutia did so with the requisite culpable state of mind. Conversely, Dr. Bhutia has provided evidence that "the choice of medications, the form of delivery (intramuscular), and dosages were medically appropriate."  ECF No. 40-9 at 5 (Dr. Paizis' Decl.) at ¶ 23.

Even if this Eighth Amendment claim is construed as one of deliberate indifference to plaintiff's safety rather than to a medical need, plaintiff's failure of proof as to Dr. Bhutia's state of mind defeats the existence of a triable issue.  Plaintiff repeatedly argues that defendants' *negligence* was the direct and proximate cause of the harm he suffered from involuntary medication.  See, e.g., ECF No. 43 at 9.   The negligent exposure of an inmate to harm does not rise to the level of an Eighth Amendment violation.  Farmer, 511 U.S. at 835.

For all these reasons, the undersigned recommends that summary judgment be granted on this claim.

ii.   Fourteenth Amendment Due Process

Defendants argue that Dr. Bhutia did not violate plaintiff's due process rights because a single order of involuntary antipsychotic medication administered in an emergency does not violate due process.  ECF No. 40-2 at 19-23.  This argument fails because, as explained below, the facts regarding the existence of an emergency are disputed.[5]  Specifically, the undersigned finds conflicting evidence on the potentially dispositive question whether plaintiff's behavior posed an imminent and serious danger to him or others at the time of his involuntary medication.

It is undisputed that prior to January 14, 2020, plaintiff had a documented history of

---

[5] Defendants' motion repeatedly refers to the definition of an "emergency" under California law and regulations.  ECF No. 40-2 at 27 ("An emergency exists [under California Penal Code § 2602(d)] when there is a sudden and marked change in an inmate's mental condition so that action is immediately necessary for the preservation of life or for the prevention of serious bodily harm to the inmate or others, and it is impractical due to the seriousness of the emergency, to first obtain informed consent."); id. at 28 (same definition under California Code of Regulations, Title 15, § 3351(a)).  California law does not necessarily define the contours of due process. The applicable constitutional standards are those established in federal caselaw interpreting Harper and progeny.

mental health issues and had been diagnosed with "mental health problem" and "unspecified schizophrenia spectrum and other psychotic disorder."  Prior to his admission at CMF's Mental Health Acute Care Facility, he had at least three stays in MHCBs because medical staff determined that he was a danger to himself or a danger to others and had aggressive or volatile behaviors.  On December 29, 2020, plaintiff received a RVR for battery on a peace officer after covering his cell window.  On January 13, plaintiff covered his cell window to get staff attention because his cell was cold.  On that date he complied with orders to uncover his window, cuff up, and was escorted to the dayroom to speak to a psychiatrist.  After he was told that the temperature issue would be addressed, he was returned to his cell without incident.  On January 14, 2020, plaintiff covered his cell window again because he was cold and was trying to get staff attention.  Plaintiff was escorted to the dayroom to speak to Dr. Bhutia.  Plaintiff and Dr. Bhutia spoke.  Dr. Bhutia was informed about the incident the day before, observed plaintiff, diagnosed him with agitation, and ordered he be involuntarily medicated.  While plaintiff's behavior during this general timeframe raised obvious and legitimate concerns about his mental state—concerns which had led to the filing of a petition for authorization to involuntarily medicate—the record is devoid of evidence that plaintiff was actually suicidal or violent, or was threatening harm to anyone including himself, at the time the medication was ordered and administered prior to the hearing on the petition.  Due process does not permit involuntary medication without procedural safeguards based solely on past mental health history, or on grounds of "agitation," absent a present emergency.

It is well established that a "merely loud and uncooperative" prisoner does not present an emergency sufficient to circumvent the procedural protections outlined in Washington v. Harper. See Kulas, 159 F.3d at 456; see also Chapman v. Haney, No. 4:01CV3187, 2004 WL 936682, at *29, 2004 U.S. Dist. LEXIS 7510, at *101-103 (D. Neb. Apr. 30, 2004) (finding that the evidence presented at trial did not establish an emergency permitting circumvention of Harper procedural rights, where inmate was yelling, agitated, continued to "escalate" and fought against restraints, but was not assaultive, physically violent, or presenting an immediate threat to himself, to others, or to property).  In Kulas, the Ninth Circuit distinguished the facts before it—involving an inmate

1  who was "loud, threatening, demanding" and "unmanageable"—from those of Hogan, supra, in

2  which the Fourth Circuit found an emergency because the prisoner had been in the throes of an

3  uncontrollable seizure for three hours and was at serious risk of harming himself in the process.

4  Kulas, 159 F.3d at 456 (citing and distinguishing Hogan, 85 F.3d at 1114).  The Ninth Circuit

5  explained that "there is no evidence that [plaintiff] posed such an imminent and serious danger to

6  himself or others that the minimal procedural requirements of Harper—notice and the right to be

7  present at and participate in a hearing—could not be met."  Id.  Here as in Kulas, the undisputed

8  evidence shows that plaintiff was agitated and disruptive, but not that he posed an imminent and

9  serious danger to himself or others.

10      Emergencies sufficient to circumvent Harper have been found when, at the time the

11  decision to involuntarily medicate was made (or very shortly before), the inmate was actively

12  engaged in self-harming, threatening, or violent behavior.  See, e.g., Hogan, 85 F.3d at 1114;

13  Riddick v. Chevalier, No. 3:11-cv-1555 SRU, 2013 WL 4823153, at *3, 2013 U.S. Dist. LEXIS

14  128008, at *10-11 (D. Conn. Sept. 6, 2013) (inmate was "inflicting self-harm by striking himself

15  repeatedly in the head with the lock on his restraints and banging his head against his cell door");

16  see also Wilson v. Chang, 955 F. Supp. 18 (D.R.I. 1997) (inmate, who was denied an extra

17  blanket, flew into a rage and ran about his cell striking his head and other body parts against the

18  walls and other objects in his cell); Spaulding v. Poitier, 548 F. App'x 587, 591 (11th Cir. 2013)

19  (inmate had declared himself suicidal and was agitated, screaming incessantly, and threatening

20  staff and other inmates; Murray v. Dabo, No. 22 CIV 4026 (VEC) (GS), 2024 WL: 1421119, at

21  *8-10, 2024 U.S. Dist. LEXIS 36969, at *21-24 (S.D.N.Y. Feb 2, 2024), report and

22  recommendation adopted, 2024 WL 964599, 2024 U.S. Dist. LEXIS 38806 (S.D.N.Y. Mar. 5,

23  2024) (inmate was screaming and threatening to assault staff, making statements such as "I will

24  fuck you up," "I'm gonna kill you, I'm gonna straight murder you"); see also, Anderson v.

25  Talisman, No. 1:17-cv-0715 ALA P, 2009 WL 2424573, at *4-14, 2009 U.S. Dist. LEXIS 68735,

26  at *16, 17, 30, 31, 37-39 (E.D. Cal. Aug. 5, 2009) (inmate, who had two prior suicide attempts

27  and recent admissions to mental health crisis beds for suicidal and homicidal ideation, made

28  statements the day before that "I am hearing voices and they are telling me that people is trying to

1    get me and kill me.  I am homicidal because I want to kill these people who want to kill me.  I

2    will stop eating and drinking now.").

3         In this case, plaintiff's most recent acts of self-harm and harm to others were weeks, not

4    hours, prior to the involuntary medication.  Plaintiff had not been involuntarily medicated in

5    response to his suicide attempt three weeks before, or the assault on an officer two weeks before.

6    Instead, a request was made on January 5, 2020, for permission to involuntarily medicate plaintiff

7    under California Penal Code § 2602.  ECF No. 40-4 at 37-40 (Christ. Decl., Exh. M, Petition for

8    Involuntary Medication and Request for Hearing).  The process for obtaining an order under

9    Penal Code § 2602 includes a hearing at which the prisoner has the opportunity to be present and

10   confront the evidence against him, as <u>Harper</u> requires.  Cal. Pen. Code. § 2602.  Instead of

11   waiting for this hearing, which was scheduled for February 4, 2020, ECF No. 40-4 at 46 (Christ.

12   Decl., Exh. M, Petition for Involuntary Medication and Request for Hearing), Dr. Bhutia ordered

13   that plaintiff be involuntarily medicated on January 14, 2020.  Defendant has not identified

14   evidence that on January 14, 2020, plaintiff "posed such an imminent and serious danger to

15   himself or others that the minimal procedural requirements of <u>Harper</u>—notice and the right to be

16   present at and participate in a hearing—could not be met."  <u>Kulas</u>, 159 F.3d at 456.

17        According to Dr. Bhutia, she made the decision to involuntarily medicate based on what

18   she knew of plaintiff's mental health and behavioral history—which was the same information

19   used to request an order to involuntarily medicate plaintiff—and based on the new information

20   she obtained on January 14, 2020, and her own observations of plaintiff on that day.  ECF No. 40-

21   8 at 4 (Dr. Bhutia Decl.) at ¶ 15.  However, the only new information and observations were that

22   plaintiff had covered his cell window on January 13 and January 14, complained he did so

23   because he was cold, was "agitated and angry," and his agitation was increasing not decreasing.

24   ECF No. 40-8 at 4 (Dr. Bhutia Decl.) at ¶ 11.  Viewing the evidence in the light most favorable to

25   plaintiff, it is far from clear there was an emergency.

26        Plaintiff has presented evidence which undercuts defendant's assertion of emergency.  He

27   has testified that when Dr. Bhutia made the order to involuntarily medicate him on January 14,

28   2020: (1) he was not irritated, was calm, and explained to Dr. Bhutia that he was cold and could

19

not sleep or eat because it was too cold in his cell, Guillory Depo. 34:10-35:19, 36:18; (2) he was

sitting in a chair, cuffed and in chains, with two officers beside him in a closed room with about

ten correctional officers, Dr. Bhutia, and a nurse, Guillory Depo. 27:14-29:1, 32:5-24; (3) he told

Dr. Bhutia she could not make this order and questioned why she was doing that if he was not on

any medication, Guillory Depo. 34:20-35:1, 38:7-39:11; (4) he was told that that he either had to

take the medication or he would be restrained, Guillory Depo. 35:6-16; (5) he did not resist, id.;

and (6) when asked whether he had a preference between his arm or his rear, he indicated his arm,

and the medication was administered without incident.  Guillory Depo. 35:13-16, 37:5-39:11,

40:6-11.  This evidence could be construed by a trier of fact to support a conclusion that

plaintiff's non-cooperation was a form of protest—in that he covered his window for a second

time because he was cold and was trying to get staff attention—and did not present an emergency.

Because there is a genuine factual dispute about whether the circumstances on January 14,

2020, constituted an emergency, the motion for summary judgment should be denied as to the

Fourteenth Amendment claim against Dr. Bhutia.

### iii.  Qualified Immunity

Dr. Bhutia also argues that she is entitled to qualified immunity on plaintiff's Fourteenth

Amendment claim because (1) plaintiff cannot establish that Dr. Bhutia violated plaintiff's due

process rights and (2) "[n]o reasonable official would have believed that ordering a single

involuntary dose each of Chlorpromazine and Benadryl for a mentally-ill patient housed in an

acute care facility who had recently attempted suicide and presented with increasing agitation that

began the previous day would violate the patient's due process rights, particularly when the

official believed the patient was in imminent danger of injuring himself."  ECF No. 40-2 at 30.

For the following reasons, the undersigned finds that Dr. Bhutia is not entitled to summary

judgment on grounds of qualified immunity.

On the first prong of the qualified immunity analysis, the undersigned has found that there

is a triable issue of fact whether Dr. Bhutia violated plaintiff's due process rights.  On the second

prong, it is clearly established in the Ninth Circuit that involuntary psychotropic medication

cannot be administered without the Harper procedural protections solely because an inmate is

1  agitated or unmanageable.  Kulas, 159 F.3d at 456.  Rather, a true emergency is required.

2  Because the facts going to the existence of an emergency are disputed, the record does not

3  support application of the qualified immunity doctrine.

4       Accordingly, the undersigned concludes that Dr. Bhutia is not entitled to summary

5  judgment on plaintiff's Fourteenth Amendment claim on grounds of qualified immunity.

6       VIII.    Plain Language Summary of this Order for a Pro Se Litigant

7       The magistrate judge is recommending that defendants' motion to revoke your in forma

8  pauperis status be denied because you have already paid the full filing fee.

9       The magistrate judge is recommending that defendants' motion for summary judgment be

10  granted in part and denied in part.  Nurse Flores should be granted summary judgment because

11  the evidence shows that you did not report your side effects to Nurse T. Flores on January 14,

12  2020, and instead may have reported them to a different nurse.  That means that you cannot prove

13  that defendant knew of and disregarded an excessive risk to your health, which is required for an

14  Eighth Amendment claim.

15       The magistrate judge further recommends summary judgment for Dr. Bhutia on your

16  Eighth Amendment claim, because the evidence does not show deliberate indifference to a

17  serious medical need or to your safety.  You say yourself that defendants were negligent, not

18  deliberately indifferent to your health and safety.  But negligence does not violate the Eighth

19  Amendment.  Your claim of involuntary medication is more appropriately addressed under the

20  Fourteenth Amendment Due Process Clause.

21       The magistrate judge recommends denial of summary judgment on your Fourteenth

22  Amendment claim.  Because there is conflicting evidence, the magistrate judge recommends that

23  you be allowed to proceed to trial on the claim that Dr. Bhutia ordered involuntary medication in

24  violation of your due process rights.

25                          CONCLUSION

26       For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

27       1.    Defendants' motion to revoke IFP status (ECF No. 34) be DENIED as moot.

28       2.    Defendants' motion for summary judgment (ECF No. 40) be GRANTED in part and

1    DENIED in part, as follows:

2        a.  GRANTED as to plaintiff's Eighth Amendment deliberate indifference claims

3            against defendants T. Flores and Dr. Bhutia; and

4        b.  DENIED as to plaintiff's Fourteenth Amendment due process claim against

5            defendant Dr. Bhutia.

6    3.   This case proceed on the Fourteenth Amendment due process claim against Dr.

7    Bhutia.

8        These findings and recommendations are submitted to the United States District Judge

9    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

10   after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13   objections shall be served and filed within fourteen days after service of the objections.  The

14   parties are advised that failure to file objections within the specified time may waive the right to

15   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED: March 11, 2025

17

18   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28